**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Case No 5:13-mj-0046 |
| | ) | |
| **THELMON PENN** | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant is charged in three Violation Notices with (1) driving under the influence of alcohol in violation of 36 C.F.R. § 4.23(a)(2), (2) failing to wear his seatbelt in violation of 36 C.F.R. § 4.15(a)[1] and (3) possessing an open container of alcohol in violation of 36 C.F.R. § 4.14(b) while within the boundary of the New River Gorge National River. Defendant has moved "to suppress all evidence that resulted from a traffic stop performed on the defendant's vehicle on April 19, 2013." (Document No. 16.) Defendant quotes the writing of the Federal Park Ranger who wrote the Violation Notices, Ranger McGahey, indicating that while he was out of his patrol vehicle on foot he observed Defendant approaching in his vehicle, saw that none of its occupants were wearing seatbelts and stopped the vehicle. He then observed that Defendant "had red and glassy eyes, and slurred speech" and required Defendant to undergo field sobriety and breathalyzer testing. Defendant asserts that his Fourth Amendment rights were violated because Ranger McGahey stopped his vehicle and then observed the seat belt violation. Defendant argues that Ranger McGahey improperly detained him stating that "[i]n the absence of any observable traffic offense prior to the

---

[1] 36 C.F.R. 4.15(a) provides that "[e]ach operator and passenger occupying any seating position of a motor vehicle in a park area will have the safety belt . . . properly fastened at all times when the vehicle is in motion." Without any additional pretext, National Park Service Rangers may stop any vehicle containing passengers who are violating this regulation. *United States v. Payne*, 26 Fed.Appx. 226, 228, 2002 WL 45888 (C.A.4(Va.)).

initiation of the stop, the vehicle stop runs afoul of the Fourth Amendment." (Id.) In response (Document No. 20.), the United States states that Ranger McGahey was out of his patrol vehicle with another officer, Ranger Keach, for the purpose of training when Defendant approached in his vehicle. The Rangers' vehicle was blocking the road such that Defendant could not get around it, and Defendant stopped. The Rangers approached Defendant's vehicle to tell him that they would move their patrol vehicle and in doing so noticed that noone in Defendant's vehicle was wearing a seatbelt. Citing Brower v. County of Inyo, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628(1989), and Shultz v. Braga, 455 F.3d 470 (4th Cir. 2006), the United States asserts that in parking their patrol car where they did, the Rangers had no intention to stop Defendant in his vehicle. The United States states that "[t]he intentional traffic stop in this case did not begin until after the rangers observed a traffic violation, that is, failure to use seatbelts. The rangers' observation of the traffic violation gave them reasonable suspicion to initiate the intentional traffic stop. Thus, the officers lawfully stopped defendant's vehicle and were entitled to detain the vehicle and engage in an impaired driving investigation after observing signs indicating that the defendant was intoxicated." (Id.)

  The Court held a hearing upon Defendant's Motion to Suppress on November 8, 2013. Ranger Keach testified stating that he and Ranger McGahey were on night shift and patrolling near Thurmond, West Virginia, on April 19, 2013. Ranger Keach, a field training officer, was training Ranger McGahey. The Rangers were following a pickup truck. At about 10:00 p.m., they stopped just before an intersection to look for vehicle tracks to determine which way the vehicle was going. Ranger Keach explained that Ranger McGahey stopped the patrol car where it blocked the road to avoid damaging any tire tracks by driving over them and also because he could not see if the berm

dropped off steeply there in the dark. He stated that he and Ranger McGahey had no intention of blocking the roadway to keep vehicles from going along it. The Rangers left their patrol car running with the headlights on. As they were looking for vehicle tracks, Defendant drove up head on in front of the Rangers' vehicle and, unable to go around it, stopped. The Rangers broke away from looking at vehicle tracks and returned to where their patrol car was to tell Defendant that they would move it. As the Rangers approached Defendant's vehicle, they noticed that noone in the vehicle was wearing a seatbelt. They then "conducted a law enforcement contact with the occupants of the vehicle." Ranger McGahey went to the driver's side, and Ranger Keach went to the passenger's side of Defendant's vehicle. They spoke with Defendant and the other occupants of the vehicle. Ranger McGahey saw that Defendant had glassy eyes and slurred speech. Ranger Keach saw empty shot glasses in the vehicle's center console. Seeing these things, the Rangers began a DUI investigation. On cross examination, Ranger Keach testified that he and Ranger McGahey approached Defendant's vehicle to tell its occupants that they would move their patrol car and not because they had seen that the occupants were not wearing seat belts. He acknowledged that, having seen Defendant's vehicle approaching, he and Ranger McGahey could have simply moved their patrol vehicle without telling Defendant and the occupants of his vehicle that they were going to do so. As the Rangers approached Defendant's vehicle, the lights of their patrol car illuminated the interior of Defendant's vehicle. Ranger Keach was shown a picture[2] of the area where he and Ranger McGahey parked their patrol car indicating that the berm was actually not steep where they parked and asked whether they

---

[2] Photographs of the area introduced in evidence show that the place where Rangers McGahey and Keach encountered Defendant is rural and desolate. There are no overhead lights. Three roadways come together into a Y, and it appears that the road is at its widest where they meet. Each roadway appears to be dirt and 1 to 1 ½ lanes wide. It appears that there is some asphalt at the Y. The sides of the roadways do not appear to be well maintained.

could have parked their patrol car off the roadway where it would not have blocked Defendant's vehicle. Ranger Keach testified that Ranger McGahey was driving the patrol car when they stopped there "and he's not necessarily as familiar with the roads as I am." Ranger Keach acknowledged that they could have parked the patrol car farther off the road but testified that it still would have blocked traffic and would have made it difficult to get out of the patrol car safely on the off road side. Ranger Keach further testified that he and Ranger McGahey were limited respecting where they could park the patrol car because they did not want to run over the tire tracks which they were intending to examine. Ranger Keach acknowledged that had he and Ranger McGahey parked half of their patrol car on the roadway, Defendant could possibly have passed in his vehicle. On redirect, Ranger Keach testified that when they parked their patrol car, he and Ranger McGahey did not intend to remain stopped there for long and did not expect anyone to come along. On recross, Ranger Keach was shown Ranger McGahey's Incident Report and acknowledged that it and the Violation Notices charging Defendant did not mention a suspicious pickup truck or their examining of tire tracks. The Court then heard statements of counsel. The United States' attorney asserted that "[t]he stopping of [Defendant]'s vehicle was an unintended consequence of the rangers' activity." She further argued that Rangers Keach and McGahey had good reason to stop where they did and it makes no difference that they could have parked their patrol car elsewhere. She stated that the Rangers did not begin the DUI investigation until after they observed the seatbelt violation. Defendant's attorney disputed the legal authority which the United States proposed (Brower and Shultz) as the basis for considering whether or not evidence should be suppressed. He urged that the matter should be viewed from the standpoint of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). He asserted that when the Rangers approached Defendant's vehicle, Defendant did not reasonably feel

4

that he was free to leave. He argued that by blocking the roadway and approaching Defendant's vehicle, the Rangers effectively seized Defendant and his vehicle within the meaning of the Fourth Amendment. He stated generally that "[t]he subjective intentions of the officers are irrelevant." But, he contended, "when [the Rangers] approached up the middle of the road physically, . . . their intention was for [Defendant] to stop." Defendant's attorney further asserted that the cases which the United States relies upon involved "true accidents" whereas "[t]his is more of a run-of-the-mill traffic stop and should be governed by the regular standard, that is , the Terry standard." He then cited the Fourth Circuit's decision in United States v. Jones, 678 F.3d 293 (4th Cir. 2012), and urged that, as in that case, the Court find that the Rangers intentions respecting stopping Defendant's vehicle are irrelevant. The United States' attorney then stated that Brower indicated that the "general intention to stop someone is a factor to be considered when making a Fourth Amendment seizure determination." She further asserted that, contrary to Defendant's attorneys assertions and implications, the Rangers' actions were objectively reasonable. It was later in the evening and dark, and the area was sparsely populated. They stopped for a short period of time to examine tire tracks. It was not unreasonable, she contended, for them to stop their patrol car in a place where it blocked the roadway. Defendant's attorney then stated that the Rangers' blocking of the roadway constituted the Fourth Amendment seizure of Defendant's vehicle but, even if it did not, the Rangers' clearly intended to stop Defendant's vehicle when they approached it though they could have simply moved their patrol car.

## DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. Amend. IV. "The touchstone of the Fourth

Amendment is reasonableness . . . ." United States v. Knights, 534 U.S. 112, 118, 122 S.Ct. 587, 591, 151 L.Ed.2d 497 (2001). The Fourth Circuit has adopted an objective test for determining if a seizure is reasonable in the context of a vehicular stop stating in United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993), as follows:

> Under the objective test, if an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment. That is so regardless of the fact that the officer would not have made the stop but for some hunch or inarticulable suspicion of other criminal activity:
>
>> When an officer observes a traffic offense – however minor – he has probable cause to stop the driver of the vehicle . . .. [T]his otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity . . .. [T]hat stop remains valid even if the officer would have ignored the traffic violation but for his other suspicions.

United States v. Hassan El, 5 F.3d at 730, quoting United States v. Cummins, 920 F.2d 498, 500 - 501 (8th Cir. 1990); See also United States v. Williams, 740 F.3d 308, 312 (4th Cir. 2014); United States v. Brinson, 2007 WL 1892482 (E.D.Va.)("A traffic offense is a specific and articulable fact justifying a traffic stop."). The focus is upon "the intent of the police as objectively manifested . . . ." Brendlin v. California, 551 U.S. 249, 260, 127 S.Ct. 2400, 2408, 168 L.Ed.2d 132 (2007). It is

6

not upon the subjective "motive of the police for taking the intentional action to stop the car . . ..". Brendlin v. California, 551 U.S. at 260, 127 S.Ct. at 2408 - 2409. An officers conduct resulting in "incidental restrictions on freedom of movement" does not impact Fourth Amendment rights. Brendlin v. California, 551 U.S. at 262, 127 S.Ct. at 2410."In stopping a vehicle, an officer must "have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). The officer may also have "a reasonable suspicion supported by articulable facts that criminal activity may be afoot." United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). "Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking * * *, but the detention or taking itself must be willful. This is implicit in the word 'seizure,' which can hardly be applied to an unknowing act." Brower v. County of Inyo, 489 U.S. 593, 596, 109 S.Ct. 1378, 1381,103 L.Ed.2d 628 (1989)(Citations omitted.). "[S]topping an automobile and detaining its occupants constitute a 'seizure' . . . even though the purpose of the stop is limited and the resulting detention quite brief." Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). The United States Supreme Court stated in Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 2389, 115 L.Ed.2d 389 (1991), that "in order to determine whether a particular encounter constitutes a seizure, a court must consider all of the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' request or otherwise terminate the encounter." A seizure occurs "[o]nly when the officer, by means of . . . show of authority, has in some way restrained the liberty of a citizen." United States v. Mendenhall, 446 U.S. 544, 552, 100 S.Ct. 1870, 1876, 64 L.Ed.2d

497 (1980), quoting Terry v. Ohio, 392 U.S. 1, 19, fn. 16, 88 S.Ct. 1868, 1879, fn. 16, 20 L.Ed.2d 889 (1968). "The Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation." Florida v. Bostick, 501 U.S. at 439, 111 S.Ct. at 2389.

At about 10:00 p.m. on April 19, 2013, Rangers McGahey and Keach parked their patrol vehicle at the intersection of three rural, desolate and unlit one lane dirt roads near Thurmond, West Virginia. Leaving the patrol vehicle running and the headlights on, they got out of the patrol vehicle to examine tire tracks. Apparently expecting no traffic and unsure of the condition of the berm in the darkness, they parked the patrol vehicle where it intruded upon the roadway. Defendant's vehicle happened along as Rangers McGahey and Keach were out of their patrol vehicle. Having no intention to conduct a law enforcement stop of Defendant's vehicle, the Rangers approached Defendant's vehicle as it came up in front of their patrol vehicle and the lights of their patrol vehicle illuminated the passenger compartment of Defendant's vehicle. Seeing the Rangers approaching and no way around their patrol vehicle, Defendant stopped his vehicle. It is evident that Defendant did not gather then as the Rangers were approaching that the Rangers intended to conduct a law enforcement stop of his vehicle. Defendant did not attempt to turn around or go around the Rangers' patrol vehicle, and Defendant and his passengers did nothing to bring themselves into compliance with the law respecting seatbelts or conceal evidence that they had been drinking alcohol. Defendant stopped because the Rangers' patrol vehicle was blocking the roadway. He did not stop because he perceived that the Rangers intended to conduct a law enforcement stop of his vehicle. Initially, the Rangers conveyed and Defendant perceived no intention of the Rangers to conduct a law enforcement stop of Defendant's vehicle. Defendant's stop cannot therefore be considered a Fourth Amendment seizure because as Defendant came to a stop, he did not gather that the Rangers

intended to conduct a law enforcement stop of his vehicle. Defendant stopped voluntarily, and a voluntary stop is not a seizure. See <u>United States v. Al Nassar</u>, 555 F.3d 722, 727 - 731 (9th Cir. 2009). The Rangers on the other hand saw as they approached Defendant's vehicle and Defendant stopped that Defendant and the other passengers in his vehicle were not wearing their seatbelts. Seeing this, the Rangers had probable cause to conduct a law enforcement stop of Defendant's vehicle. As they did so, they saw evidence that Defendant and the passengers in his vehicle had been drinking and proceeding with a DUI investigation. Considering the totality of the circumstances, the Court finds no violation of Defendant's Fourth Amendment rights.

It is therefore hereby **ORDERED** that Defendant's Motion to Suppress (Document No. 16.) is **DENIED**.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record.

ENTER: December 5, 2014.

*R. Clarke VanDervort*
R. Clarke VanDervort
United States Magistrate Judge